UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER SEBOLT,

        Plaintiff,

v.

THE AMERICAN YOUTH FOUNDATION,

        Defendant.

Case No.

Hon.

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. Ste. 125
Ann Arbor, MI  48104
(844) 487-9489
Noah@hurwitzlaw.com
Brendan@hurwitzlaw.com

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Jennifer Sebolt (hereinafter "Plaintiff"), by and through her attorneys, HURWITZ LAW, PLLC, states the following in support of her Complaint against Defendant The American Youth Foundation (hereinafter "Defendant"):

## INTRODUCTION

1.    There is no "pandemic exception" to the prohibitions against religious discrimination afforded by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Elliot-Larsen Civil Rights Act of 1976, MCL 37.2102 *et seq.* ("ELCRA"). Defendant nevertheless terminated Plaintiff on or about June 30, 2022, because her sincerely held religious beliefs precluded her compliance with Defendant's COVID-19 vaccine mandate.

Defendant forced Plaintiff into a "crisis of conscience" by forcing her to choose whether to abandon her sincerely held religious beliefs or face termination. *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021) ("Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion."). Plaintiff's religious convictions are highlighted by the fact that she remained unvaccinated in the face of termination, losing her livelihood in the process.

## PARTIES AND JURISDICTION

2. Plaintiff is an individual residing in New Era, Michigan.

3. Defendant is a foreign nonprofit corporation, incorporated under the laws of the State of Missouri, that owns and operates Camp Miniwanca in Shelby, Michigan.

4. This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court has supplemental jurisdiction over Plaintiff's ELCRA claims pursuant to 28 U.S.C. § 1367. This Court also has original diversity jurisdiction over all state and federal claims pursuant to 28 U.S.C. § 1332 because Defendant is now, and at all times mentioned was, a corporation duly organized and existing under the laws of Missouri and Plaintiff is now, and at all times mentioned was a citizen and domiciled in the State of Michigan.

5. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b) because it is the judicial district in which a substantial part of the events giving rise to Plaintiffs' claims occurred.

6. Plaintiff received a Right to Sue letter from the Equal Employment Opportunity Commission on January 17, 2023.

## FACTUAL ALLEGATIONS

7. Defendant hired Plaintiff as an Office Coordinator on or about February 4, 2019.

2

8. Plaintiff worked for Defendant as an Office Coordinator until her termination on or about June 30, 2022.

9. Prior to her termination, Plaintiff began working remotely for Defendant on or about March 1, 2020.

10. Plaintiff's counterpart, Office Coordinator Julie Stengele, also began working remotely for Defendant on or about March 1, 2020 until at least April 4, 2022.

11. Operations Director Griffin Vogler inquired whether Plaintiff would be "comfortable sharing her COVID-19 vaccination plans" on or about March 5, 2021, before the U.S. Food and Drug Administration ("FDA") approved the first COVID-19 vaccine.

12. In fact, the FDA did not approve the first COVID-19 vaccine until August 23, 2021.[1]

13. Defendant resumed all programing in late 2021, despite the ongoing pandemic, because "youth needed the social and emotional solace only camp could provide."

14. Defendant's employees and participants in the camps were permitted to roam the premises unvaccinated until Defendant announced its COVID-19 vaccine mandate on or about May 20, 2022, so long as employees and participants submitted to masking and regular testing (protocols deemed effective to prevent the spread of COVID-19 prior to May 20, 2022).

15. Defendant began requiring that new seasonal staff be vaccinated against COVID-19 as a condition of their employment approximately six (6) months later, on or about November 23, 2021.

16. Yet, Defendant still did not require its seasonal staff whose employment predated

---

[1] Press Release, U.S. Food & Drug Admin., FDA Approves First COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.

3

the new seasonal staff's employment to be vaccinated at the time.

17. Around this time, Plaintiff began to work in-person for Defendant, in a cold office with little heat.

18. Around this time, Finance Manager Dawn Hammersley inquiring about Plaintiff's vaccination status, disclosed to Plaintiff her own hesitancy to receive the second dose of the COVID-19 vaccine.

19. Ms. Stengele continued to work remotely for Defendant until at least April 4, 2022.

20. Defendant pressured its employees to vaccinate against COVID-19 against their wills.

21. The U.S. Supreme Court later stayed the vaccine mandate that had been promulgated by the Occupational Safety and Health Administration ("OSHA") on January 13, 2022. *Nat'l Fed'n of Indep. Businesses v. Dep't of Lab.*, 142 S. Ct. 661 (2022).

22. Ms. Hammersley admitted that she had received her first dose of the vaccine only because she was afraid to lose her job; otherwise, she would not have gotten the first dose.

23. Thereafter, Defendant hired Office Assistant Jessica Cheney to work with Plaintiff and eventually Kate Delaney.

24. Thereafter, on or about May 20, 2022, Defendant's Lead Health Officer, Carrie Smith, instructed employees via email to submit their proofs of COVID-19 vaccinations.

25. Between August 23, 2021 and May 20, 2022, Defendant notified camp participants and Summer Staff that they would be required to vaccinate against COVID-19 for the upcoming summer.

26. In May 2022, Defendant changed its vaccination policy for the 2022 Summer Season to require all summer season campers and summer staff to receive the COVID-19 vaccine

booster shot. The change in policy did not require that campers under twelve years old receive the COVID-19 vaccine booster shot.

27. Defendant did not require camp participants under the age of twelve to receive the COVID-19 vaccine booster shot because Defendant was worried too many potential campers would cancel their camp reservations.

28. Plaintiff seeks to make all decisions through prayer and studying the Holy Bible.

29. With the assistance of her local faith leader, Plaintiff began drafting her request for religious accommodation from Defendant's COVID-19 vaccine mandate the weekend after Defendant announced the mandate.

30. Thereafter, Ms. Smith announced that religious accommodation requests would not be accepted, making the submission of any requests for religious accommodation utterly futile.

31. Ms. Smith also called Plaintiff to instruct her to inform parents of potential campers that no exceptions to Defendant's COVID-19 vaccine mandate would be granted.

32. Defendant actively coerced employees to abandon their religious convictions.

33. Plaintiff always wore a mask in the workplace and tested regularly.

34. Plaintiff was perfectly willing to continue wearing a mask in the workplace and testing regularly, protocols which had been deemed effective before May 20, 2022.

35. Plaintiff received an email on or about June 29, 2022, instructing her to submit proof of vaccination against COVID-19. Plaintiff responded that she had no proof of vaccination.

36. Plaintiff thereafter requested an update on her employment status.

37. Defendant did not respond to Plaintiff's request.

38. Defendant locked Plaintiff out of her office on the following day, June 30, 2022.

39. Defendant effectively terminated Plaintiff on or about June 30, 2022.

40. Defendant never offered Plaintiff a severance.

41. Defendant no longer requires that new hires for full-time positions be vaccinated against COVID-19.

42. Defendant is currently hiring for three full-time positions: Director of Development, Miniwanca Director of Programs, and Miniwanca Director of Girls Camp. None of these job postings mention vaccinations.

43. Defendant never elicited religious accommodation requests to its COVID-19 vaccine mandate, thereby never even attempting to "go through the motions" of the mandatory interactive process.

44. Employees forced to comply with the vaccine mandate against their religious beliefs were forced into the horrible position of choosing between vaccination or termination:

> Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . present[] a crisis of conscience for many people of faith. It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children. To many, this is the most horrifying of Hobson's choices.

*Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

45. The religious accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

46. However, no such "bilateral cooperation" occurred in this case.

47. There is no reason why a host of reasonable accommodations would not have been effective. As a reasonable accommodation, an unvaccinated employee entering the workplace "might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally,

accept a reassignment." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021). "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id.* (Mar. 1, 2022).

48. Plaintiff could have worn a facemask in the workplace.

49. Plaintiff could have participated in temperature screenings.

50. Plaintiff could have periodically tested.

51. Plaintiff could have engaged in frequent sanitizing and disinfecting.

52. Plaintiff could have worked remotely.

53. Plaintiff could have been reassigned.

54. Defendant never explained why no accommodations were being granted.

55. Plaintiff did not expect a license to roam about uninhibited without wearing a mask or testing regularly. Plaintiff was more than willing to continue wearing a mask in the workplace and testing regularly, protocols which had been deemed effective before May 20, 2022.

56. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 22, 2022, less than one month after her termination.

57. Plaintiff was not required to engage in a futile exercise of requesting a reasonable accommodation to the vaccine mandate, given the statements that were made by Ms. Smith.

58. Plaintiff's religious convictions are highlighted by the fact that she remained unvaccinated in the face of termination, losing her livelihood in the process.

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

59. The prohibition against religious discrimination imposes a "duty" on employers to accommodate the sincere religious observances of employees, absent a showing of "undue

7

hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

60. The employer, not the employee, bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978).

61. Plaintiff could have performed her job duties and responsibilities remotely.

62. Plaintiff had previously worked remotely from home for over a year.

63. Ms. Stengele worked remotely from home for over two years.

64. Defendant's employees and participants in the camps were permitted to roam the premises unvaccinated for over a year, so long as they submitted to masking and regular testing, protocols that was deemed effective in preventing the spread of the virus before May 20, 2022.

65. Defendant is currently hiring for three full-time positions.

66. None of the job postings for these positions mention vaccinations.

67. Defendant cannot allege undue hardship given the above facts.

**COUNT I**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII")**
**RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE**

68. Plaintiff restates the foregoing paragraphs as set forth herein.

69. Defendant is an "employer" because it is a corporation engaged in an industry affecting commerce with fifteen (15) or more employees. 42 U.S.C. § 2000e(b).

70. Plaintiff had been a loyal employee since she was hired on February 4, 2019, with no history of discipline prior to her sudden termination on June 30, 2022.

71. Plaintiff seeks to make all decisions through prayer and studying the Holy Bible.

72. Plaintiff holds a sincere religious belief that conflicts with Defendant's vaccine mandate.

73. Ms. Smith emailed all employees on or about May 20, 2022 requesting submission

of proof of vaccination.

74. Ms. Smith thereafter announced that religious accommodation requests would not be accepted, making any submission of an religious accommodation request utterly futile.

75. Plaintiff was terminated for not complying with the mandate on June 30, 2022.

76. Defendant failed to engage Plaintiff in the interactive process before terminating her.

77. Defendant pressured employees to be vaccinated against their wills.

78. Defendant could have granted Plaintiff multiple reasonable accommodations.

79. Plaintiff could have worn a mask in the workplace.

80. Plaintiff could have participated in temperature screening.

81. Plaintiff could have tested periodically.

82. Plaintiff could have engaged in frequent sanitizing and disinfecting.

83. Plaintiff could have worked remotely.

84. Plaintiff could have been reassigned.

85. Plaintiff has suffered mental and emotional distress, outrage, mental and physical anguish, loss of reputation, humiliation, embarrassment, indignity, and the physical effects associated therewith as a direct and proximate result of her termination.

86. Plaintiff has been placed in financial distress and suffered a loss of earnings and benefits, loss of health insurance and a loss of and impairment of her earning capacity and ability to work as a direct and proximate result of her termination.

87. Plaintiff has been required to employ the services of an attorney.

88. Defendant's actions were intentional and/or reckless.

## COUNT II
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
### <u>DISPARATE TREATMENT DISCRIMINATION</u>

89. Plaintiff restates the foregoing paragraphs as set forth fully herein.

90. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) they were a member of a protected class, (2) they experienced an adverse employment action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

91. Plaintiff espoused religious beliefs and is therefore a member of a protected class.

92. Defendant directly discriminated against Plaintiff by terminating them after they stated their sincerely held religious beliefs that conflicted with Defendant's subjected standard of religiosity.

93. Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

94. It is undisputed that Plaintiff was qualified for the position.

95. Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated.

96. Plaintiff was terminated and replaced with a person of different religious beliefs.

97. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of her requests, and will so suffer in the future.

10

## COUNT III
## VIOLATION OF ELCRA, MCL 37.2101, et seq.
## <u>DISPARATE TREATMENT AND INTENTIONAL DISCRIMINATION</u>

98. Plaintiff restates the foregoing paragraphs as set forth fully herein.

99. Plaintiff holds sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

100. Plaintiff informed Defendant how these sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

101. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing that the employee (1) was a member of a protected class; (2) experienced an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class or that the employee was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

102. Defendant directly discriminated against Plaintiff based on termination after the employee espoused sincerely held religious beliefs that conflicted with Defendant's policy.

103. Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

104. Plaintiff's sincerely held religious beliefs qualify the employee as a member of a protected class.

105. Defendant placed Plaintiff on unpaid suspension before ultimately terminating Plaintiff.

106. Plaintiff was qualified for the position.

107. Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite being unvaccinated.

108. Plaintiff was terminated and replaced with a person of different religious beliefs.

109. Defendant also terminated Plaintiff based on Defendant's own subjective standard of religiosity, thus directly discriminating against Plaintiff's unique sincerely held spiritual beliefs.

110. EEOC Guidance states that ("[t]he definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs . . . including those that may be unfamiliar to employers.")

111. The law on religious discrimination states that religious beliefs need not be "acceptable, logical, consistent or comprehensible to others" and the law "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

112. Defendant defied the law when it determined that some religious beliefs of its employees were valid and while others were bogus.

113. In discovery, Plaintiff will be able to investigate which types of religious beliefs Defendant found were acceptable and which types of religious beliefs Defendant discriminated against, thereby establishing evidence probative of discriminatory intent.

114. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the termination and will so suffer in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a.   Compensatory damages for monetary and non-monetary loss;

b.   Exemplary and punitive damages;

c.   Prejudgment interest;

d.   Attorneys' fees and costs; and

e.   Such other relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

Dated: March 10, 2023

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER SEBOLT,

       Plaintiff,                                         Case No.

v.
                                                                          Hon.
THE AMERICAN YOUTH FOUNDATION,

       Defendant.

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. Ste. 125
Ann Arbor, MI  48104
(844) 487-9489
Noah@hurwitzlaw.com
Brendan@hurwitzlaw.com

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Jennifer Sebolt, by and through her attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

                                               Respectfully Submitted,
                                               HURWITZ LAW PLLC

                                               */s/ Noah S. Hurwitz*
                                               Noah S. Hurwitz (P74063)
                                               *Attorney for Plaintiff*

Dated: March 10, 2023